IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
CIVIL DIVISION

MARCELLA WARD                                               PLAINTIFF

VS.                    CASE NO. 60CV-15-26

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON;
d/b/a LIBERTY MUTUAL INSURANCE COMPANY; and
THE BOARD OF PENSIONS OF THE PRESBYTERIAN
CHURCH (U.S.A.)                                             DEFENDANTS

**AMENDED COMPLAINT**

COMES NOW Plaintiff, MARCELLA WARD, by and through her attorneys, THE GRAHAM LAW FIRM, by James Lucas Graham, and for her Complaint against Defendants, herein states and alleges as follows:

## I. PARTIES & JURISDICTION

1. Plaintiff, MARCELLA WARD, is an individual residing in Johnson County, Arkansas. Plaintiff was residing in Johnson County, Arkansas, at all times relevant hereto.

2. Separate Defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, d/b/a LIBERTY MUTUAL INSURANCE COMPANY (hereinafter LIBERTY MUTUAL) is a Life Insurance and Disability Insurance Company duly authorized and licensed to conduct business in the State of Arkansas, with its Corporate Headquarters located in Boston, Massachusetts. LIBERTY MUTUAL's registered agent of service is listed as being CORPORATION SERVICE COMPANY, 84 State St., Boston, MA 02109.

3. Separate Defendant, THE BOARD OF PENSIONS OF THE PRESBYTERIAN CHURCH (U.S.A.) (hereinafter BOARD OF PENSIONS), is a non-profit religious organization with its registered office located at 2000 Market St., Philadelphia, Pennsylvania 19103-3298.

4. This action is brought for breach of contract, bad faith, and other relief, Plaintiff lives in and worked in Johnson County, Arkansas, the contract was signed in Johnson County,

Arkansas, most of the evidence and witnesses are located in Johnson County, Arkansas, and all parties have sufficient contacts with Johnson County, Arkansas, therefore, jurisdiction and venue are properly before this Court.

## II.  FACTUAL ALLEGATIONS

7. Plaintiff began working for the Presbyterian Church as a pastor on or about January 1, 2004. Plaintiff's employment package contained a long term disability policy through Separate Defendant LIBERTY MUTUAL, that promised to pay Plaintiff a percentage of her salary indefinitely in the event of a long term disability that prevented her from performing her job. Plaintiff does not possess the exact contractual documents between the Presbyterian Church and separate Defendant LIBERTY MUTUAL, but she will be obtaining same through discovery and will supplement her Complaint once she has obtained said contract. The documentation Plaintiff does possess regarding the disability policy is attached hereto as Exhibit "A" and incorporated by reference herein.

8. In January of 2010, Plaintiff fell down the stairs of her church severely injuring her back. Due to lingering issues related to said fall and another illness Plaintiff had yet to be diagnosed with, Plaintiff found it exceedingly difficult to perform her job duties, and ultimately was unable to work at all. Plaintiff was/is in constant pain and was/is only able to perform the lightest of duties in short bursts. Plaintiff absolutely could not and cannot perform her full job duties as a Presbyterian pastor. Plaintiff fully complied with her prescribed medical treatments and physical therapy.

9. Plaintiff's official last day of work as a pastor was April 3, 2011, and she submitted her request for disability benefits shortly thereafter.

10. Plaintiff's Bishop, General Presbyter for the Presbytery of Arkansas, and her

doctors all supported and were in favor of her disability claim.

11. On or about June 15, 2011, Plaintiff received notice from separate Defendant, LIBERTY MUTUAL, that her claim for disability benefits was being denied. Plaintiff subsequently appealed said decision to separate Defendant, THE BOARD OF PENSIONS OF THE PRESBYTERIAN CHURCH (U.S.A.), but her appeal was denied on December 11, 2011. Plaintiff then submitted her final appeal to the BOARD OF PENSIONS APPEAL BOARD on or about February 1, 2012, and her final appeal was denied on or about April 13, 2012. Defendants indicated that Plaintiff's pain levels were irrelevant and suggested that she could perform her job duties, which include quite a bit of driving, if she took pain medications. Plaintiff's pain medicines clearly indicate that she is not to drive while taking them.

12. Plaintiff exhausted her administrative remedies by fully appealing the denial of disability benefits.

13. In September of 2012, Plaintiff received a diagnosis of fibromyalgia and attempted to file for disability benefits based upon the effects of both the fibromyalgia and the back injuries she sustained. However, since the BOARD OF PENSIONS had already denied her claim for benefits due to the back injuries, it would not allow Plaintiff to submit both the fibromyalgia and the back injury simultaneously and Plaintiff was forced to submit her second claim based solely on the fibromyalgia.

12. On or about August 6, 2013, Plaintiff's claim for benefits based upon her diagnosis of fibromyalgia was denied.

13. Upon information and belief, Plaintiff had both back injuries and fibromyalgia when she initially applied for disability benefits in 2011.

14. LIBERTY MUTUAL defines disability or disabled as being "[t]he inability of a member due to sickness or bodily injury to perform substantially all of the material duties of his or her regular work or any other type of work that would afford a reasonably comparable level of

income, and after a period of 24 consecutive months of said disability, the inability of a Member due to sickness or bodily injury to perform any type of work for which he or she is fitted by education, training, or experience, all of which conditions must be certified by the Board."

15. Regardless of whether Plaintiff had an active diagnosis of fibromyalgia at the time she initially submitted her claim for disability benefits, Plaintiff was substantially unable to perform her job duties as a Presbyterian pastor and should have been approved for benefits.

16. Defendants breached the contract for disability benefits by denying Plaintiff's claim for benefits when she fully met the definition of being disabled and supported her alleged disability with medical records and other evidence.

17. Defendants denial of Plaintiff's claim for benefits and refusal to allow Plaintiff to submit a claim containing both her back injuries and fibromyalgia diagnosis together constitute bad faith thereby entitling Plaintiff to punitive damages.

18. Defendants further required excessive, unnecessary, and/or duplicative information from Plaintiff in support of her disability claim and unreasonably delayed her claim and ultimate receipt of benefits. Said actions also constitute bad faith entitling Plaintiff to punitive damages.

19. Defendants have breached their contract with Plaintiff herein, have done so in bad faith, and Plaintiff has suffered significant and substantial damages as a result.

20. This suit is not governed by the Employee Retirement Income Security Act, because Churches are exempt from said act pursuant to 29 U.S.C. § 1022(33).

### III. CAUSES OF ACTION

#### COUNT I: BREACH OF CONTRACT

28. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-20 of its Complaint, as if same were set out word for word herein.

29. Plaintiff and Defendants entered into a legally binding, valid, and enforceable

contract for Disability Insurance, and Plaintiff fully performed her obligations under said contract by working for the Presbyterian Church and by paying her insurance premiums. The disability insurance portion of Plaintiff's salary package was not optional. Disability insurance was included in all of the pastors contracts and payment for the policy premiums was withheld from Plaintiff's salary by the church.

30. Separate Defendant the BOARD OF PENSIONS materially breached the contract between the parties by failing to approve Plaintiff's claim for disability benefits, when she clearly established her entitlement to same, and Separate Defendant, LIBERTY MUTUAL, materially breached the contract between the parties by failing to approve Plaintiff for and pay her the benefits she was/is due.

31. Defendants, acting jointly and severally, further materially breached the contract between the parties by refusing to allow Plaintiff to submit all of her injuries/illnesses together to establish her entitlement to disability benefits. The contract between the parties does not prohibit a claimant from submitting 2 diagnoses simultaneously and Defendants requiring Plaintiff to submit said diagnoses separately was a clear breach of contract.

32. Due to Defendants material breach of contract Plaintiff has incurred significant and substantial monetary damages, and Plaintiff should be awarded a judgment against Defendants jointly and severally.

## COUNT II: BAD FAITH

33. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-32 of its Complaint, as if same were set out word for word herein.

34. Defendants intentionally denied Plaintiff disability benefits despite the fact that Plaintiff clearly met the policy definition of being "disabled". Said act is contrary to the implied covenant of good faith and fair dealings.

35. Defendants denial of Plaintiff's claim for benefits and refusal to allow Plaintiff to

submit a claim containing both her back injuries and fibromyalgia diagnosis together also constitute the use bad faith on Defendants' parts.

36. Defendants further required excessive, unnecessary, and/or duplicative information from Plaintiff in support of her disability claim and unreasonably delayed her claim and ultimate receipt of benefits, further demonstrating bad faith on Defendants' parts.

37. Defendants should be punished for their use of bad faith in their handling of Plaintiff's claims for disability benefits and their bad faith denial of said claims.

38. Finally, after being denied disability benefits Defendants coerced Plaintiff into changing her status to "seeking a call" or "actively trying to find a job" in order to remain on the health insurance policy at its reduced cost. After 18 consecutive months of unemployment the cost of Plaintiff's health insurance, which included death and disability insurance, increased by an additional $800 plus per month. After a second 18 month period of further unemployment the amount remained at that increased amount but the death and disability portion was removed. After a third 18 month period, which will end in August of 2015, Plaintiff's health policy will be cancelled outright. The leadership of the PRESBYTERIAN CHURCH and regional representatives of BOP were completely aware of Plaintiff's continued health problems at all times but coerced Plaintiff to list herself as "seeking a call" by telling her that doing so would save Plaintiff $800+ per month. Upon information and belief, separate Defendant, the BOARD OF PENSIONS OF THE PRESBYTERIAN CHURCH coerced Plaintiff to list herself as "seeking a call" in order to make it appear that Plaintiff was not disabled and was actively seeking work. Said act constitutes bad faith and separate Defendant, the BOARD OF PENSIONS OF THE PRESBYTERIAN CHURCH, should be punished accordingly.

### IV. DAMAGES

38. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-37 of its Complaint, as if same were set out word for word herein.

39. Plaintiff has suffered compensatory damages as a direct result of Defendants breach of contract, and Plaintiff is entitled to the following relief:

    a) Lump sum award equal to the benefits Plaintiff should have received from April 3, 2011, through the trial date (including the value of health benefits and life insurance), plus pre and post judgment interest at the prevailing rate; (e.g. The greater of 60% of Plaintiff's effective salary up to $70,000 or 60% of the median salary for Plaintiff's job classification at time of disability x number of months between April 3, 2011 and the Trial + value of health benefits and other additional perks Plaintiff is entitled to + interest)

    b) Lump sum payment equal to present cash value of all future benefits Plaintiff is entitled to receive (including value of health and life insurance benefits due to Plaintiff); OR monthly disability payments in the amount and for the period proscribed in the Disability Policy, plus full benefits as proscribed in the Policy;

    c) Costs and attorney fees.

40. In addition to the compensatory damages Plaintiff is entitled to above, Defendants use of bad faith in the handling and denial of Plaintiff's claim for disability benefits entitles Plaintiff to punitive damages to be determined by a jury of her peers.

### V. JURY REQUEST, RESERVATIONS, AND OTHER RELIEF

41. Plaintiff demands a trial by a jury of her peers.

42. Plaintiff reserves the right to amend her Complaint and plead further upon completion of discovery.

WHEREFORE, Plaintiff, MARCELLA WARD, respectfully prays that she be granted the relief prayed for herein; that she be granted a judgment against Defendant jointly and severally the exact amount of which to be determined by the jury; that she be awarded punitive damages, due to Defendants bad faith, in an amount to be determined by the jury; that she be awarded pre- and post- judgment interest at the prevailing rate; for her attorneys' fees and costs incurred herein; and for all other just and proper relief to which she is or may be entitled, at law or equity.

Respectfully submitted,

MARCELLA WARD, Plaintiff
THE GRAHAM LAW FIRM, her Attorneys

BY: _____
James Lucas Graham
ABA No. 08229
The Graham Law Firm
212 South Main Street
Malvern, Arkansas 72104
(501) 337-5291 (Office)
(501) 337-5292 (Facsimile)
jlukegraham@gmail.com